76 F.3d 379
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
OHIO DEPARTMENT OF HUMAN SERVICES, Petitioner,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.
 No. 94-3794.
 United States Court of Appeals, Sixth Circuit.
 Dec. 20, 1995.
 
 Before: BROWN, MILBURN, and NORRIS, Circuit Judges.
 OPINION
 PER CURIAM.
 
 
 1
 Petitioner, the Ohio Department of Human Services ("Ohio"), seeks review of a decision of the Secretary of the United States Department of Health and Human Services (the "Secretary") denying a proposed amendment to Ohio's plan for administering the Aid to Families with Dependent Children ("AFDC") program under Title IV-A of the Social Security Act, 42 U.S.C. §§ 601-617. For the following reasons, we affirm.
 
 I.
 
 2
 Under the AFDC program, the federal government provides matching funds to states for welfare payments made in accordance with federal law. Title IV-A of the Social Security Act provides the guidelines for the program, and each state may create and administer a "plan," subject to the approval of the Secretary, for the implementation of the program in accordance with the federal statutes. The part of the AFDC program relevant to this case is the provision concerning dependent children of unemployed parents ("AFDC-UP"), 42 U.S.C. § 607.
 
 
 3
 One of the bases for a family's qualification for AFDC-UP is that the parent who is the principal earner in the household "has 6 or more quarters of work (as defined in subsection (d)(1) of this section) ... in any 13-calendar-quarter period ending within one year prior to the application for [AFDC-UP]." 42 U.S.C. § 607(b)(1)(A)(iii)(I). Section 607(d)(1)(A) then defines a "quarter of work" as "a calendar quarter ... in which [any] individual participated in the program under section 602(a)(19) of this title and part F of this subchapter." Part F, 42 U.S.C. §§ 681-687, creates the Job Opportunities and Basic Skills ("JOBS") training program, while § 602(a)(19) requires most recipients of AFDC to participate in JOBS.
 
 
 4
 In addition to AFDC, Ohio runs its own welfare system, known as "general assistance" ("GA"), for those who do not qualify for AFDC and its related JOBS component. As with the federal JOBS program, Ohio requires that its GA recipients participate in job training activities. Ohio has chosen to coordinate these efforts by pooling recipients of AFDC and GA, as well as food stamps, into the same state-run training program. Ohio's JOBS program satisfies the criteria established by federal law, and thus GA recipients experience the identical training as is required of AFDC recipients. However, participation by GA recipients is not mandated by federal law, subject to federal oversight, or federally funded.
 
 
 5
 Believing that recipients of GA who participate in JOBS should be entitled to the same quarters of credit toward AFDC-UP as recipients of AFDC who participate in JOBS, Ohio proposed to the Administration for Children and Families ("ACF") within the Department of Health and Human Services Amendment 91-1 to Ohio's AFDC plan. Amendment 91-1, in relevant part, reads as follows: "After October 1990, a quarter of work with respect to any individual means a calendar quarter in which such individual participated in the same activities as a participant in a program under Section 402(a)(19) [of the Social Security Act, 42 U.S.C. § 602(a)(19) ] and under Part F...."[1] This language loosely tracks the federal statutory definition for "quarter of work" at 42 U.S.C. § 607(d)(1)(A).
 
 
 6
 The Regional Administrator of ACF disapproved Ohio's proposed plan amendment, and Ohio sought reconsideration. The Assistant Secretary of ACF selected a presiding hearing officer to handle the rehearing, and that officer issued a twenty-six page opinion proposing the disapproval of Amendment 91-1. The basis for that opinion was that a recipient of GA, doing the same activities as an AFDC-eligible JOBS participant, is not participating "in the program under section 602(a)(19) of this title and part F of this subchapter" as required by 42 U.S.C. § 607(d)(1)(A). The Assistant Secretary of ACF adopted the recommendation of the hearing officer, and the Assistant Secretary's decision operates as the final decision of the Secretary. Ohio then sought review in this court.
 
 II.
 
 7
 In light of the Secretary's position that the only participation in a JOBS program that can qualify for purposes of AFDC-UP is participation as a recipient of AFDC, Ohio's claim is unavailing unless federal law unambiguously contradicts the Secretary's view. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). The language of 42 U.S.C. § 607(d)(1)(A) requires that an individual claiming quarters of credit toward AFDC-UP have participated in JOBS "under" § 602(a)(19) and part F of Title IV. A short review of the relevant statutes demonstrates that only those individuals who are receiving AFDC can participate in JOBS under federal law. Ohio's GA recipients engaging in identical job training do not receive AFDC and are involved in what is only a state-law analogue to JOBS, thereby rendering their quarters of training inapplicable for purposes AFDC-UP eligibility.
 
 
 8
 Section 687(e) defines "potential participants" of JOBS as "all individuals ... who are recipients of aid to families with dependent children under part A of this subchapter." Section 682(f)(1)(B)(i), which addresses the Community Work Experience Program, a component of JOBS, establishes the maximum number of hours that a participant can be required to work in terms of the amount of AFDC benefits the participant receives divided by the greater of the state or the federal minimum wage. Furthermore, the sanction for wrongfully refusing to participate in JOBS is a reduction in one's AFDC benefits. 42 U.S.C. § 602(a)(19)(G). These three sections demonstrate that Congress intended JOBS to be limited to recipients of AFDC. Furthermore, 42 U.S.C. § 603(l)(2) provides for a substantial reduction in federal matching funds where less than fifty-five percent of a state's expenditures under the JOBS program are to long-term recipients of AFDC as defined in that section. It is difficult to believe that Congress meant for GA recipients to be eligible for JOBS in light of this clear command that states devote most of their JOBS funds to long-term AFDC recipients.
 
 III.
 
 9
 Notwithstanding the language and internal logic of the statutes, Ohio claims that the Secretary was in error in three respects. We shall address these points in turn.
 
 
 10
 First, Ohio argues that denying Amendment 91-1 would defeat the purpose of AFDC-UP, which Ohio describes as "to allow unemployed parents the ability to receive AFDC benefits." This characterization of the purpose of AFDC-UP is far too broad. Congress plainly did not mean to create an entitlement to federal funds for all unemployed parents. There are still substantial limitations on the eligibility for AFDC-UP and for the JOBS program. Ohio's argument would ultimately allow states to determine eligibility for federal assistance. While the purpose of JOBS is "to assure that needy families with children obtain the education, training, and employment that will help them avoid long-term welfare dependence," 42 U.S.C. § 681(a), Ohio would use JOBS to create eligibility for federal welfare. It is this result that would defeat the purpose of AFDC-UP.
 
 
 11
 Second, Ohio points to 42 U.S.C. § 683(a)(1) as evidence that Congress intended participation in state-run job training programs that are identical in substance to the federal JOBS program to count toward AFDC-UP eligibility. That section states: "The Governor of each State shall assure that program activities under this part are coordinated in that State with programs operated under the Job Training Partnership Act [29 U.S.C.A. § 501 et seq.] and with any other relevant employment, training, and education programs available in that State." Ohio notes that the state operates the same job training program for recipients of AFDC, GA, and food stamps, and it suggests that to refuse to count time spent by GA recipients in this program would "gut" the coordination requirement. That argument is entirely without merit. The plain purpose of requiring coordination is to enhance the efficiency, and thus to reduce the cost, of administering JOBS by minimizing duplication of effort in the state and federal programs. The coordination requirement does not mean that GA recipients are participating in JOBS for purposes of AFDC-UP.
 
 
 12
 Third, Ohio attempts to introduce the Department of Agriculture and the food stamps program into the mix. The argument appears to be as follows: (1) the coordination requirement of § 683(a)(1) compels Ohio to unify all of its job training programs; (2) Ohio therefore must give the same training to recipients of AFDC, GA, and food stamps; (3) the Department of Agriculture has recognized the Ohio JOBS program to be sufficient to warrant exempting food stamp recipients who participate in the Ohio program from the separate training requirement found in the statutes governing the food stamp program; and (4) the Secretary should defer to the judgment of the Department of Agriculture in assessing the quality of Ohio's JOBS program. Setting aside the fact that the decisions of the Department of Agriculture do not in any way bind the Department of Health and Human Services, the two determinations here were entirely distinct. To declare that participation in Ohio's JOBS program by a food stamps recipient is sufficient to satisfy the work requirement of the food stamps program is wholly unrelated to the determination of whether that participation should count toward AFDC-UP eligibility.
 
 
 13
 The decision of the Secretary is affirmed.
 
 
 
 [1]
 The remainder of Amendment 91-1 addresses work training prior to October of 1990, as does Amendment 90-9, which was also rejected by the Secretary. Ohio has expressly abandoned its challenge to the denial of Amendment 90-9 and the part of Amendment 91-1 that concerns training prior to October 1990